1  Joshua A. Bloom (SBN: 183358)            Alexander Brand (SBN: 305748)
   jbloom@baylawgroupllp.com                alexander.brand@bbklaw.com
2  Beth B. Koh (SBN: 256694)                Katrina Wraight (SBN: 312424)
   bkoh@baylawgroupllp.com                  katrina.wraight@bbklaw.com
3  BAY LAW GROUP LLP                        BEST BEST & KRIEGER LLP
   1831 Solano Ave., #8554                  300 S. Grand Ave. Fl 25
4  Berkeley, California 94707               Los Angeles, California 90071
   Telephone: (510) 495-0418                Telephone: (213) 617-8100
5

6  Attorneys for Defendant
   CITY OF NAPA
7

8                      UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11 HAGSTROM PROPERTIES, LLC, a California    Case No. 4:25-cv-04369-HSG
   Limited Liability Company,
12                                           Judge Haywood S. Gilliam, Jr.
           Plaintiff,
13                                           **DEFENDANT CITY OF NAPA'S**
   v.                                        **ANSWER, AFFIRMATIVE DEFENSES,**
14                                           **COUNTERCLAIM, CROSSCLAIM, AND**
   NAPA SANITATION DISTRICT; CITY OF         **DEMAND FOR JURY TRIAL**
15 NAPA, a municipal corporation; DOES 1- 25,
   inclusive,
16                                           Action Filed: July 17, 2025
           Defendants.                       Trial Date:    none set
17
   ─────────────────────────────────
18 CITY OF NAPA, a municipal corporation,

19         Counter and Cross-Claimant,

20 v.

21 HAGSTROM PROPERTIES, LLC, a California
   Limited Liability Company,
22
           Counter-Defendant,
23
                   and
24
   NAPA SANITATION DISTRICT; and ROES 1-
25 10,

26         Cross-Defendants.

27

28

Defendant City of Napa ("Defendant" or the "City") answers the allegations contained in Plaintiff Hagstrom Properties, LLC's ("Plaintiff" or "Hagstrom") First Amended Complaint for (1) CERCLA Cost Recovery; (2) CERCLA Declaratory Relief; (3) RCRA Injunctive Relief; (4) Inverse Condemnation, California Constitution Article I §19; (5) Continuing Nuisance; (6) Dangerous Condition of Public Property ("FAC") as follows. Unless expressly admitted herein, Defendant denies each and every allegation of the FAC.

## PARTIES

1.    Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 1 and therefore denies the same.

2.    Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 2 and therefore denies the same.

3.    Defendant admits that it is a municipality in the County of Napa, California. Defendant denies any remaining allegations of Paragraph 3.

4.    Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 4.

## JURISDICTION

5.    The allegations of Paragraph 5 constitute legal contentions and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 5 to the extent they pertain to Defendant.

## DIVISIONAL ASSIGNMENT

6.    The allegations of Paragraph 6 constitute legal contentions and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 6 to the extent they pertain to Defendant.

## GENERAL ALLEGATIONS

### Site and Historical Operations

7.    Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 7 and therefore denies the same.

8.    Defendant is without sufficient information to form a belief as to the truth or falsity

1   of the allegations of Paragraph 8 and therefore denies the same.

2       9.      Defendant denies the allegation in Paragraph 9 that Dow "legally" discharged

3   wastewater containing PCE into the sanitary sewer. Defendant is without sufficient information to

4   form a belief as to the truth or falsity of the allegations of Paragraph 9 and therefore denies the

5   same.

6                       **Discovery of PCE Released from Sewer Pipes**

7       10.     Defendant is without sufficient information to form a belief as to the truth or falsity

8   of the allegations of Paragraph 10 and therefore denies the same.

9       11.     Defendant is without sufficient information to form a belief as to the truth or falsity

10  of the allegations of Paragraph 11 and therefore denies the same.

11      12.     Defendant is without sufficient information to form a belief as to the truth or falsity

12  of the allegations of Paragraph 12 and therefore denies the same.

13      13.     Defendant denies the allegations on page 4 line 28 to page 5, line 7. As to all other

14  allegations in this paragraph, Defendant is without sufficient information to form a belief as to the

15  truth or falsity of the allegations of the remaining allegations of Paragraph 13 and therefore denies

16  the same.

17      14.     Defendant is without sufficient information to form a belief as to the truth or falsity

18  of the allegations of Paragraph 14 and therefore denies the same.

19                   **Ownership of and Liability for Leaking Sewer Pipes**

20      15.     Defendant is without sufficient information to form a belief as to the truth or falsity

21  of the allegations of Paragraph 15 and therefore denies the same.

22      16.     Defendant admits the allegations of Paragraph 16 to the extent that in

23  approximately 1968, what had been the Former Combined Sewer Pipe ceased operation as a

24  sanitary sewer line, and became a distinct storm sewer pipe operated from that time by Defendant.

25  Further, Defendant admits that it currently operates the storm sewer pipe that runs along Seminary

26  Street in Napa. Defendant denies the remaining allegations of Paragraph 16.

27      17.     Defendant denies the allegations in the last sentence of Paragraph 17. As to all

28  other allegations in this paragraph, Defendant is without sufficient information to form a belief as

1    to the truth or falsity of the remaining allegations of Paragraph 17 and therefore denies the same.

2        18.    Defendant is without sufficient information to form a belief as to the truth or falsity

3    of the allegations of Paragraph 18 and therefore denies the same.

4        19.    As to the allegations made against this answering Defendant, Defendant denies the

5    allegations of Paragraph 19. As to any allegations in this paragraph made against any other party,

6    this answering Defendant is without sufficient information to form a belief as to the truth or falsity

7    of those allegations contained in this paragraph and therefore denies the same.

8        20.    Defendant is without sufficient information to form a belief as to the truth or falsity

9    of the allegations of the first sentence of Paragraph 20 and therefore denies the same. Defendant

10   denies the remaining allegations of Paragraph 20 as they pertain to Defendant.

11       21.    Defendant is without sufficient information to form a belief as to the truth or falsity

12   of the allegations of the first sentence of Paragraph 21 and therefore denies the same. Defendant

13   denies the remaining allegations of Paragraph 21 as they pertain to Defendant.

14                    **Procedural Actions Preceding Litigation**

15       22.    Defendant is without sufficient information to form a belief as to the truth or falsity

16   of the allegations of the first sentence of Paragraph 22 and therefore denies the same.

17       23.    Defendant admits that BOS on October 11, 2024, BOS presented a Government

18   Claims Act claim to Defendant ("BOS-City Claim"), and that a copy of the BOS-City Claim is

19   attached to the FAC as Exhibit G. Defendant admits that on November 26, 2024 it responded to

20   the BOS-City Claim asserting that it was untimely, but denies that such assertion is incorrect.

21   Defendant is without sufficient information to form a belief as to the truth or falsity of the

22   remaining allegations of the first sentence of Paragraph 23 and therefore denies the same.

23       24.    Defendant admits that Plaintiff on December 5, 2024 presented a Government

24   Claims Act claim to Defendant ("Hagstrom-City Claim"), and that a copy of the Hagstrom-City

25   Claim is attached to the FAC as Exhibit I. Defendant admits that on January 19, 2025 it responded

26   to the Hagstrom-City Claim asserting that it was untimely, but denies that such assertion is

27   incorrect. Defendant denies the allegations of Paragraph 24 as they pertain to Defendant.

28   Defendant is without sufficient information to form a belief as to the truth or falsity of the

DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM,
AND DEMAND FOR JURY TRIAL

1  remaining allegations asserted against any other party in this action and therefore denies the same.

2      25.    Defendant denies the allegations of Paragraph 25 as they pertain to Defendant.

3  Defendant is without sufficient information to form a belief as to the truth or falsity of the

4  remaining allegations asserted against any other party in this action and therefore denies the same.

5      26.    Defendant admits that Plaintiff requested leave from the City to present a late claim

6  on behalf of BOS and Hagstrom regarding the BOS-City Claim and Hagstrom-City Claim.

7  Defendant also admits that it did not respond to those requests thereby denying those requests by

8  operation of law. Defendant denies all other allegations in this paragraph.

9      27.    Defendant admits that Plaintiff on February 20, 2025 issued a notice of

10  endangerment under 42 U.S.C. § 6972(b)(2)(A) to Defendant, and that a copy of such notice is

11  attached to the FAC as Exhibit J. Defendant denies the remaining allegations of Paragraph 27 as

12  they pertain to Defendant.

13                          **FIRST CLAIM FOR RELIEF**

14                  **(CERCLA Cost Recovery: 42 U.S.C. § 9607(a))**

15      28.    Defendant reasserts its responses to Paragraphs 1 through 27 and incorporates them

16  by reference herein.

17      29.    The allegations of Paragraph 29 constitute legal contentions and/or conclusions to

18  which no response is required. To the extent a response is required, Defendant denies the

19  allegations of Paragraph 29 to the extent they pertain to Defendant.

20      30.    The allegations of Paragraph 30 constitute legal contentions and/or conclusions to

21  which no response is required. To the extent a response is required, Defendant denies the

22  allegations of Paragraph 30 to the extent they pertain to Defendant. Defendant is without sufficient

23  information to form a belief as to the truth or falsity of the remaining allegations of Paragraph 30

24  and therefore denies the same.

25      31.    The allegations of Paragraph 31 constitute legal contentions and/or conclusions to

26  which no response is required. To the extent a response is required, Defendant denies the

27  allegations of Paragraph 31 to the extent they pertain to Defendant.

28      32.    Defendant denies the allegations of the first and last sentence of Paragraph 32 as

DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM,
AND DEMAND FOR JURY TRIAL

those allegations relate to Defendant. To the extent these allegations relate to other parties, then Defendant is without sufficient information to form a belief as to the truth or falsity of the first and last sentences of Paragraph 32 and therefore denies the same. The allegations of the second sentence of Paragraph 32 constitute legal contentions and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 32 to the extent they pertain to Defendant. Unless specifically admitted or denied, Defendant is without sufficient information to form a belief as to the truth or falsity of the remaining allegations of Paragraph 32 and therefore denies the same.

33. The allegations of the second sentence of Paragraph 33 constitute legal contentions and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 33 to the extent they pertain to Defendant. Defendant is without sufficient information to form a belief as to the truth or falsity of the remaining allegations of Paragraph 33 and therefore denies the same.

34. Defendant denies the allegations of Paragraph 34 as they pertain to Defendant.

## SECOND CLAIM FOR RELIEF

### (CERCLA Declaratory Relief: 42 U.S.C. § 9613(g)(2))

35. Defendant reasserts its responses to Paragraphs 1 through 34 and incorporates them by reference herein.

36. The allegations of Paragraph 36 constitute legal contentions and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 36 to the extent they pertain to Defendant.

37. The allegations of Paragraph 37 constitute legal contentions and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 37 to the extent they pertain to Defendant.

38. The allegations of Paragraph 38 constitute legal contentions and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 38 to the extent they pertain to Defendant.

39. The allegations of Paragraph 39 constitute legal contentions and/or conclusions to

which no response is required. To the extent a response is required, Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 39 and therefore denies the same as they pertain to Defendant.

## THIRD CLAIM FOR RELIEF

### (RCRA Injunctive Relief and Costs of Litigation: 42 U.S.C. § 6972(a)(1)(B))

40.     Defendant reasserts its responses to Paragraphs 1 through 39 and incorporates them by reference herein.

41.     The allegations of Paragraph 41 constitute legal contentions and/or conclusions to which no response is required. To the extent a response is required, Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 41 and therefore denies the same as they pertain to Defendant.

42.     Defendant denies the allegations of Paragraph 42 as they pertain to Defendant.

43.     The allegations of Paragraph 43 constitute legal contentions and/or conclusions to which no response is required.

44.     Defendant denies the allegations of Paragraph 44 as they pertain to Defendant,

45.     The allegations of Paragraph 45 constitute legal contentions and/or conclusions to which no response is required.

46.     Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 46 and therefore denies the same as they pertain to Defendant. The term "sewer pipes in the vicinity" is vague, and on that ground Defendant denies the allegations of Paragraph 46.

47.     The allegations of Paragraph 47 constitute legal contentions and/or conclusions to which no response is required.

48.     The allegations of Paragraph 48 constitute legal contentions and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 48 to the extent they pertain to Defendant.

DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM, AND DEMAND FOR JURY TRIAL

1

**FOURTH CLAIM FOR RELIEF**

2

**(Inverse Condemnation – Physical Taking, CA Constitution Article I, § 19)**

3       49.     Defendant reasserts its responses to Paragraphs 1 through 48 and incorporates them

4  by reference herein.

5       50.     Defendant denies the allegations of Paragraph 50 as they pertain to Defendant.

6       51.     Defendant denies the allegations of Paragraph 51 as they pertain to Defendant.

7       52.     Defendant denies the allegations of Paragraph 52 as they pertain to Defendant.

8       53.     The allegations of Paragraph 53 constitute legal contentions and/or conclusions to

9  which no response is required. To the extent a response is required, Defendant denies the

10  allegations of Paragraph 53 to the extent they pertain to Defendant.

11

**FIFTH CLAIM FOR RELIEF**

12

**(Continuing Private Nuisance – Cal. Code Civ. Proc. § 731; Cal. Civ. Code § 3479)**

13       54.     Defendant reasserts its responses to Paragraphs 1 through 53 and incorporates them

14  by reference herein.

15       55.     Defendant is without sufficient information to form a belief as to the truth or falsity

16  of the allegations of Paragraph 55 and therefore denies the same.

17       56.     Defendant denies the allegations of Paragraph 56 as they pertain to Defendant.

18       57.     The allegations of Paragraph 57 constitute legal contentions and/or conclusions to

19  which no response is required. To the extent a response is required, Defendant denies the

20  allegations of Paragraph 57 to the extent they pertain to Defendant.

21       58.     The allegations of Paragraph 58 constitute legal contentions and/or conclusions to

22  which no response is required. To the extent a response is required, Defendant denies the

23  allegations of Paragraph 58 to the extent they pertain to Defendant.

24       59.     The allegations of Paragraph 59 constitute legal contentions and/or conclusions to

25  which no response is required. To the extent a response is required, Defendant denies the

26  allegations of Paragraph 59 to the extent they pertain to Defendant.

27       60.     The allegations of Paragraph 60 constitute legal contentions and/or conclusions to

28  which no response is required. To the extent a response is required, Defendant denies the

DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM, AND DEMAND FOR JURY TRIAL

allegations of Paragraph 60 to the extent they pertain to Defendant.

61.    The allegations of Paragraph 61 constitute legal contentions and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 61 to the extent they pertain to Defendant.

62.    The allegations of Paragraph 62 constitute legal contentions and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 62 to the extent they pertain to Defendant.

63.    The allegations of Paragraph 63 constitute legal contentions and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 63 to the extent they pertain to Defendant.

## SIXTH CLAIM FOR RELIEF

### (Dangerous Condition of Public Property – Cal. Gov. Code § 835)

64.    Defendant reasserts its responses to Paragraphs 1 through 63 and incorporates them by reference herein.

65.    Defendant denies the allegations of Paragraph 65 as they pertain to Defendant.

66.    The allegations of Paragraph 66 constitute legal contentions and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 66 to the extent they pertain to Defendant.

67.    The allegations of Paragraph 67 constitute legal contentions and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 67 to the extent they pertain to Defendant.

68.    The allegations of Paragraph 68 constitute legal contentions and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 68 to the extent they pertain to Defendant.

69.    The allegations of Paragraph 69 constitute legal contentions and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 69 to the extent they pertain to Defendant.

70.    The allegations of Paragraph 70 constitute legal contentions and/or conclusions to

DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM, AND DEMAND FOR JURY TRIAL

which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 70 to the extent they pertain to Defendant.

## REMAINING PARAGRAPHS

The remaining paragraphs of the FAC consist of Plaintiff's Prayer for Relief for which no response is required. To the extent a response is required, Defendant denies all remaining paragraphs to the extent they pertain to Defendant.

## **AFFIRMATIVE DEFENSES**

The following defenses are applicable, where appropriate, to any, all and each of Plaintiff's claims for relief. Additionally, Defendant, in asserting the following defenses, does not admit that the burden of proving the allegations or denials contained in the defenses is upon Defendant but, to the contrary, asserts that, by reason of denials or by reason of relevant statutory or judicial authority, the burden of proving the facts relevant to many of the defenses or the burden of proving the inverse of the allegations contained in many of the defenses is upon the Plaintiff. Furthermore, Defendant does not admit, in asserting any defense, any responsibility or liability of Defendant but, to the contrary, specifically denies any and all allegations of responsibility and liability in Plaintiffs' FAC.

## **FIRST AFFIRMATIVE DEFENSE**

### (Failure to State a Claim for Relief)

Plaintiff's FAC, and each purported claim asserted therein, fails to state a claim upon which relief may be granted.

## **SECOND AFFIRMATIVE DEFENSE**

### (Uncertainty)

Plaintiff's FAC, and each purported claim asserted therein, is uncertain.

## **THIRD AFFIRMATIVE DEFENSE**

### (Assumption of Risk)

Plaintiff knowingly and voluntarily assumed the risk, if any, of the damages alleged in the FAC.

DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM, AND DEMAND FOR JURY TRIAL

1

**FOURTH AFFIRMATIVE DEFENSE**

2

(Intervening/Superseding Acts)

3

Defendant is not liable to Plaintiff because of the intervening and superseding acts of all

4

other parties , all of which proximately caused the damages, if any, alleged in the FAC.

5

**FIFTH AFFIRMATIVE DEFENSE**

6

(No Cause-in-Fact)

7

Plaintiff cannot prove any facts showing that the acts or omissions of Defendant were the

8

cause in fact of any threatened or actual releases of hazardous substances or hazardous wastes as is

9

alleged in the FAC.

10

**SIXTH AFFIRMATIVE DEFENSE**

11

(Proximate Cause/Substantial Factor)

12

Plaintiff cannot prove any facts showing that the acts or omissions of Defendant was the

13

proximate cause of, or a substantial factor in, any threatened or actual releases of hazardous

14

substances or hazardous wastes as alleged in the FAC.

15

**SEVENTH AFFIRMATIVE DEFENSE**

16

(Comparative Negligence Against Plaintiff)

17

The negligence of Plaintiff proximately caused and/or was a substantial factor in whatever

18

injuries or damages are alleged by Plaintiff in the FAC. By reason thereof, Plaintiff's recovery, if

19

any, must be diminished by the proportion of its own negligence and/or intentional misconduct.

20

**EIGHTH AFFIRMATIVE DEFENSE**

21

(Comparative Negligence of All Other Parties)

22

The negligence of all other parties proximately caused and/or was a substantial factor in

23

whatever injuries or damages are alleged by Plaintiff in the FAC. By reason thereof, Plaintiff's

24

recovery, if any, must be diminished by the proportion of the negligence and/or intentional

25

misconduct of all other parties.

26

**NINTH AFFIRMATIVE DEFENSE**

27

(Conformance with Statute, Regulations, and Industry Standards)

28

To the extent Plaintiff proves that Defendant conducted any of the activities alleged in the

DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM, AND DEMAND FOR JURY TRIAL

FAC, those activities conformed with and were pursuant to statutes, government regulations and industry standards based upon the state of knowledge existing at the time of the activities.

## TENTH AFFIRMATIVE DEFENSE

### (Estoppel)

By virtue of the acts, conduct and omissions of Plaintiff, it is estopped from asserting the claims alleged in the FAC.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Waiver)

As a result of the acts, conduct and omissions of Plaintiff, it has waived its right to assert the purported claims for relief in the FAC and its right to recovery.

## TWELFTH AFFIRMATIVE DEFENSE

### (Mitigation of Damages)

Plaintiff failed to take reasonable steps to mitigate any damages by failing to timely and economically investigate the existence and extent of the alleged contamination at and adjacent to the Property and by failing to timely and economically remediate such contamination.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

Some of the claims for relief asserted in the FAC are barred by the applicable statutes of limitations, including, but not limited to, California Code of Civil Procedure sections 337, 337.1, 337.15, 337.2, 338(b), 338.1, 340, and 343, CERCLA, 42 U.S.C. Section 9601 et seq.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Laches)

By virtue of Plaintiff's unreasonable delay in commencing this action, which delay has caused prejudice to Defendant, certain of the purported claims for relief asserted in the FAC are barred by the doctrine of laches.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (No Ownership of "Facility")

Defendant does not and did not own or operate the "Facility," as defined by Plaintiff, and

therefore, among other defenses, Defendant is not liable for any resulting response costs or damages by reason of CERCLA Section 107, 42 U.S.C. Section 9607.

### SIXTEENTH AFFIRMATIVE DEFENSE

(No Causation/De Minimus Effect)

If there was a release of any hazardous substances or hazardous wastes as alleged by Plaintiff from any property owned by Defendant, release was of such a minor, trivial or insignificant amount in view of the circumstances surrounding the alleged contamination of the soil and groundwater at the Property to negate any finding of causation associated with Defendant as matter of law. Defendant further alleges that in the event that at any time mentioned in the FAC, Defendant was not in compliance with any statute or regulation described therein, which Defendant denies, any such instance of noncompliance was de minimus and immaterial, both in absolute terms and relative to the contributions of hazardous waste or hazardous substances, and therefore insufficient as a matter of law under the due process and equal protection rights guaranteed by the United States Constitution pursuant to the de minimus curat lex doctrine to give rise to any liability.

### SEVENTEENTH AFFIRMATIVE DEFENSE

(Section 107(b)(3) of CERCLA—Innocent Landowner Defense)

The releases or threats of releases of hazardous substances and hazardous wastes, if any, alleged in the FAC and the resulting damages therefrom, were solely caused by the acts or omissions of a third party or parties, including Plaintiff. Such third party or parties were neither an employee nor an agent of Defendant, nor did the acts or omissions of such third party or parties occur in connection with a contractual relationship, existing directly or indirectly, with Defendant. If it is determined that there were releases of hazardous substances or hazardous wastes at the Property, then Defendant alleges that Defendant exercised due care with respect to the hazardous substances and hazardous wastes allegedly concerned, taking into consideration the characteristics of such hazardous substances and hazardous wastes in light of all relevant facts and circumstances and took precautions against foreseeable acts or omissions of any third party and the consequences that could foreseeably result from such acts or omissions. Therefore, Defendant is not liable for

1  any resulting response costs or damages by reason of CERCLA Section 107(b)(3), 42 U.S.C.
2  Section 9607(b)(3).

3  **EIGHTEENTH AFFIRMATIVE DEFENSE**
4  (Inconsistency with National Contingency Plan)
5  Section 107(a)(4)(B) of CERCLA, 42 U.S.C. Section 9607(a)(4)(B), authorizes recovery
6  only for response costs incurred which are necessary and consistent with the National Contingency
7  Plan. Part or all of the response costs allegedly incurred and to be incurred by Plaintiff are not a
8  necessary cost of response or are not consistent with the National Contingency Plan. As such,
9  Plaintiff is not entitled to recovery for such activities and costs.

10  **NINETEENTH AFFIRMATIVE DEFENSE**
11  (No Release Under CERCLA Section 107(a))
12  The alleged release or threatened release that caused Plaintiff to allegedly incur response
13  costs did not occur during from any facility owned or operated by Defendant and therefore
14  Defendant cannot be liable under Section 107(a) of CERCLA.

15  **TWENTIETH AFFIRMATIVE DEFENSE**
16  (No Joint and Several Liability)
17  Joint and several liability should not be imposed on Defendant because joint and several
18  liability is not mandatory and it would be inequitable to impose joint and several liability on
19  Defendant.

20  **TWENTY-FIRSTAFFIRMATIVE DEFENSE**
21  (Joint and Several Liability Improper)
22  The FAC and each cause of action are barred because they fail to state a claim or set forth
23  facts sufficient to support a finding of joint and several liability against Defendant.

24  **TWENTY-SECOND AFFIRMATIVE DEFENSE**
25  (No Right to Recovery for Divisible and Distinct Liability)
26  Defendant is not jointly and severally liable for any damage alleged in the FAC because
27  any effect of any act or omission of Defendant is divisible and distinct from any compensable
28  damage incurred by Plaintiff.

DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM, AND DEMAND FOR JURY TRIAL

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

(Reasonable Basis for Apportionment)

Defendant is not jointly and severally liable for any damage alleged in the FAC because there is a reasonable basis upon which to apportion any liability among the parties to the captioned action.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

(No Cost Recovery Under CERCLA)

Plaintiff is not entitled to the cost recovery sought under CERCLA § 9607 because it is not an innocent party.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

(CERCLA Has No Attorneys' Fees Provision)

Plaintiff may not recover all or a portion of its claimed attorney's fees under CERCLA.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

(Unclean Hands)

Plaintiff's claims for relief are barred, in whole or in part, by the doctrine of unclean hands.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

(No Contribution)

Plaintiff cannot prove any fact showing that the conduct of Defendant contributed to the handling, storage, treatment, transportation or disposal of solid or hazardous wastes or hazardous substances as alleged in the FAC or to any releases thereof.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

(Undue Delay)

Plaintiff has, contrary to its legal obligation under state and federal law, failed to take effective and reasonable action to abate the alleged hazards on its property.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

(Right to Offset)

Plaintiff's recovery, if any, against Defendant must be offset by any amount that Plaintiff must pay as a responsible party.

**THIRTIETH AFFIRMATIVE DEFENSE**

(Future Costs Under CERCLA)

Plaintiff cannot recover from Defendant future costs as this is inconsistent with Section 107(a) of CERCLA, 42 U.S.C. Section 9607(a).

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

(Costs are Not Necessary Response Costs Under CERCLA)

The costs which Plaintiff seeks to recover by way of the FAC do not constitute necessary response costs within the meaning of Section 107(a) CERCLA, 42 U.S.C. Section 9607(a).

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

(No Right to Recovery for Non-Cost Effective Remedial Actions)

Plaintiff is not entitled to a recovery of remedial costs from Defendant because Plaintiff's alleged remedial actions were not and are not "cost-effective" per 42 U.S.C. Section 9621.

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

(Imputation of Liability to Plaintiff)

Any release or threat of release of any hazardous substance, any imminent and substantial endangerment relating to any hazardous waste, and any other damage alleged in the FAC were caused by acts, omissions or fault that are imputed to Plaintiff by reason of the relationship of said persons or entities to Plaintiff.

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

(Due Care)

Defendant exercised due care with respect to all matters alleged in the FAC, and otherwise conducted itself as a reasonable person under the circumstances.

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

(Adequate Remedies)

Plaintiff's claims for equitable relief are barred, in whole or in part, as Plaintiff has an adequate remedy at law for damages.

1

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

2

(Equitable Indemnity)

3    Without conceding that any act of Defendant caused damage to Plaintiff or any other

4  person in any respect, Defendant alleges that Defendant is entitled to equitable indemnity against

5  any judgment that may be entered against Defendant.

6

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

7

(Negligence)

8    Plaintiff's claims are barred, in whole or in part, as Plaintiff did not exercise ordinary care,

9  caution, and prudence in connection with the transactions and events alleged in the FAC.

10

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

11

(Excessive and Unnecessary Costs Related to Historical or Current Practices on Property)

12    Plaintiff is not entitled to any recovery of costs insofar as any such costs incurred by

13  Plaintiff are excessive, unnecessary, and unreasonable, especially any costs related to

14  contamination from historical or current practices on Plaintiff's property.

15

### THIRTY-NINTH AFFIRMATIVE DEFENSE

16

(Lack of Knowledge and Control)

17    Plaintiff's claims as against Defendant are barred, in whole or in part, as any alleged

18  pollution or contamination alleged in the FAC occurred prior to Defendant's alleged ownership

19  and control over any alleged sources of such, and Defendant had no knowledge or control over

20  sources which may have caused such alleged contamination or pollution.

21

### FORTIETH AFFIRMATIVE DEFENSE

22

(No Liability)

23    Defendant is not liable for any acts or omissions undertaken by or at the direction or

24  sufferance of local, state, or federal authority, including, without limitation, acts or omissions

25  made in accordance with any statutes, laws, or regulations applicable at the time the acts or

26  omissions occurred.

27

28

DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM,
AND DEMAND FOR JURY TRIAL

**FORTY-FIRST AFFIRMATIVE DEFENSE**

(No Liability for Passive Migration)

Defendant is not liable for passive migration of any alleged contamination caused by Plaintiff's failure to respond to and remediate the alleged contamination.

**FORTY-SECOND AFFIRMATIVE DEFENSE**

(No Imminent and Substantial Endangerment)

The conditions alleged as attributable to Defendant in the FAC do not present an imminent and substantial endangerment to health or the environment pursuant to the provisions of the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901, *et seq.*, implementing regulations, or judicial interpretations thereof, thus the FAC fails to state a claim under 42 U.S.C. § 6972(a)(1)(B).

**FORTY-THIRD AFFIRMATIVE DEFENSE**

(Uncertainty as to Damages, Rights, and Remedies)

Plaintiff's FAC, and each purported claim asserted therein, is uncertain as to damages, rights and remedies as between Plaintiff and Blue Oak School.

**FORTY-FOURTH AFFIRMATIVE DEFENSE**

**(Failure to Timely Exhaust Administrative Remedies)**

Defendant alleges on information and belief that the FAC, and each cause of action asserted therein, is barred by Plaintiff's failure to timely initiate and exhaust administrative remedies and/or otherwise failed to comply with the statutory prerequisites to the bringing of this action.

**FORTY-FIFTH AFFIRMATIVE DEFENSE**

**(Failure to Comply with the Government Claims Act)**

Defendant alleges on information and belief that the state law causes of action contained in the FAC are barred by Plaintiff's failure to timely comply with the requirements of the Government Claims Act including submission of a timely government claim, and seeking court permission to submit a late claim. (Gov. Code § 810 *et seq.*)

**FORTY-SIXTH AFFIRMATIVE DEFENSE**

**(No Notice)**

Defendant alleges that Plaintiff is not entitled to relief against the Defendant as sought by the FAC because the Defendant cannot be liable for an alleged dangerous condition of public property where the Defendant did not have actual or constructive notice of any alleged dangerous condition, or, if it had such notice, the Defendant did not have notice for a long enough time to remedy any such alleged dangerous condition

**FORTY-SEVENTH AFFIRMATIVE DEFENSE**

**(Inspection Immunity)**

As a separate affirmative defense to the FAC and each and every cause of action therein, the Defendant alleges that Plaintiff is not entitled to relief against the Defendant as sought by the FAC on the ground that it is not liable for injury caused by its failure to make an inspection, or by reason or making an inadequate or negligent inspection. (Gov. Code § 818.6.)

**FORTY-EIGHTH AFFIRMATIVE DEFENSE**

**(No Dangerous Condition)**

As a separate affirmative defense to the FAC and each and every cause of action therein, the Defendant alleges that Plaintiff is not entitled to relief against the City as sought by the FAC because, assuming *arguendo* that the injuries alleged in the FAC occurred on property owned or controlled by the Defendant, there was no dangerous condition as alleged in the FAC that would give rise to liability based on statute or case law.

**FORTY-NINTH AFFIRMATIVE DEFENSE**

**(No Responsibility for Non-Economic Damages)**

As a separate affirmative defense to the FAC and each and every cause of action therein, the Defendant alleges that Plaintiff is not entitled to relief against the Defendant as sought by the FAC to the extent Plaintiff is barred pursuant to Civil Code section 1431.2 from recovery for any non-economic damages except those allocated directly to the Defendant.

**FIFTIETH AFFIRMATIVE DEFENSE**

**(Governmental Immunity)**

As a separate affirmative defense to the FAC and each and every cause of action therein, the Defendant alleges that it is immune from liability for the causes of action alleged. This immunity includes, but is not limited to, those immunities defined in Government Code section 815 *et seq.* including sections 815.2, 815.4, 815.6, 818, 818.2, 818.4, 818.6, 818.8, 820.2, 820.8, 821, 821.2, 821.4, 830, 830.2, 830.4, 830.6, 830.8, 830.9, 831, 831.2, 831.3, 831.4, 831.7, 831.8, 835, 835.2, 835.4, 840, and 846.

**FIFTY-FIRST AFFIRMATIVE DEFENSE**

**(Design Immunity)**

As a separate affirmative defense to the FAC and each and every cause of action therein, the Defendant alleges Plaintiff is not entitled to relief against the Defendant as sought by the FAC to the extent the FAC is insufficient to state causes of action against the Defendant because the plan or design of the subject property, as may be alleged by the FAC, was approved in advance by the Defendant, or employees thereof, exercising discretionary authority to approve the plan and design, and it was reasonable to approve the plan or design.  (Gov. Code § 830.6.)

**FIFTY-SECOND AFFIRMATIVE DEFENSE**

**(Nuisance Created by Third Party)**

As a separate affirmative defense to the FAC, the Defendant alleges that any alleged nuisance existing on the property was created, not by the Defendant, but by a third party, without the Defendant's knowledge or consent or any act or negligence on its part.

**FIFTY-THIRD AFFIRMATIVE DEFENSE**

**(Reservation of Right to Assert Additional Defenses)**

Plaintiff has failed to particularize its claims, or that Defendant's lack of knowledge of the circumstances surrounding Plaintiff's claims prevents Defendant from asserting all applicable defenses at this time. Upon further particularization of the claims by Plaintiff or upon discovery of further information concerning Plaintiff's claims, Defendant reserves the right to assert additional defenses.

**COUNTERCLAIM AND CROSSCLAIM**

While preserving all of its denials and defenses to Hagstrom's First Amended Complaint [Dkt. 25] ("FAC"), Defendant City of Napa ("City") asserts the following Counterclaims against Hagstrom Properties, LLC ("Hagstrom" or "Counter-Defendant") and Crossclaims against Napa Sanitation District ("Napa San" or "Cross-Defendant") pursuant to Fed R. Civ. P. 13. The Counter and Crossclaims set forth herein arise out of the transaction and/or occurrence that is the subject matter of the FAC and does not require adding another party over whom the court cannot acquire jurisdiction.

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over the subject matter of the City's Counter and Crossclaims pursuant to the Comprehensive Environmental Response, Compensation and Liability Act as amended by the Superfund Amendments and Reauthorization Act of 1986 ("CERCLA"), 42 U.S.C. §§ 9607 and 9613; and pursuant to 28 U.S.C. § 1331 as involving questions arising under federal law. This Court also has subject matter jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

2.      This Court has supplemental jurisdiction over the state law Counterclaims pursuant to 28 U.S.C. § 1367, as this Court has original jurisdiction over the federal questions presented in the counterclaims herein, and the state law counterclaims are so related to the counterclaims in the action with such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in the Northern District of California (i) under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these Counter and Crossclaims occurred in this District; (ii) under 42 U.S.C. § 9613(b) because the releases or damages occurred in this District; and (iii) under 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b) because Hagstrom and Napa San reside or otherwise own property at issue in this District.

DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM, AND DEMAND FOR JURY TRIAL

**PARTIES**

4.     The City is a municipality in Napa County, California, and operates a municipal separate storm sewer system in the City of Napa.

5.     The City is informed and believes, and on that basis alleges, that Counter-Defendant Hagstrom Properties, LLC is a California limited liability company with its principal place of business at 870 Emerald Bay Road, Suite 307, South Lake Tahoe, California; since 1955 has owned the property and shopping center in Napa, California, shown on Exhibits A and B to the FAC (the "Hagstrom Property"); and was lessor to Dow Cleaners ("Dow") that operated a dry cleaning business on the portion of the Hagstrom Property with an address of 1634 Clay Street, Napa, California; and, on information and belief, as owner of the Hagstrom Property and lessor to Dow Hagstrom had the right and duty to ensure that Dow complied with applicable laws relating to use of the Hagstrom Property, including ensuring that Dow did not dispose of hazardous substances into the sanitary sewer system directly or indirectly connected to the Hagstrom Property, nor otherwise dump, release, or spill such chemicals into or onto the ground or otherwise into the environment. Such rights and obligations of Hagstrom would have included rights of inspection, and requirements that Dow cease such disposal or releases and remediate any resulting contamination, and lease termination.

6.     The City is informed and believes, and on that basis alleges, that Cross-Defendant Napa Sanitation District is a limited-purpose special district in Napa County, California, formed in 1949, that owned, operated, and was responsible for maintenance of all sanitary sewer lines within the City of Napa, including any sewer lines that served as both sanitary and storm lines, such as what is referred to in the FAC as the "Former Combined Sewer Pipe."

7.     The true names and capacities, whether individual, corporate, associate or otherwise of defendants named as Roes 1–10, inclusive, are unknown to the City at the present time, and the City therefore sues Roes 1–10 by such fictitious designations.

8.     The City shall request leave of court to amend this Counter and Crossclaim to insert the true names and capacities of the fictitiously designated Roes 1–10 when the same have been ascertained. All references in this Counter and Crossclaim to "Defendants" shall include

DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM, AND DEMAND FOR JURY TRIAL

1   Counter-Defendant Hagstrom Properties, LLC, Cross-Defendant Napa Sanitation District, and all

2   specifically named and fictitiously named Roes 1–10.

3                                   **GENERAL ALLEGATIONS**

4          9.      Hagstrom and Napa San are persons within the meaning of CERCLA § 101(21), 42

5   U.S.C. § 9601(21).

6          10.     On information and belief, Counter-Defendant Hagstrom has owned the Hagstrom

7   Property since at least 1955, and from at least 1960, and likely earlier, until 2003, leased a portion

8   of that Hagstrom Property to Dow Cleaners, which operated a dry cleaning operation for the

9   entirety of that period. (FAC ¶¶ 1, 8) Dow dumped hazardous substances, including

10  perchloroethylene ("PCE"), into the sanitary sewers owned and operated by the Napa Sanitation

11  District ("Napa San"). (FAC ¶ 9) (Reference to "PCE" herein includes tetrachloroethylene,

12  perchloroethylene, and related breakdown products and volatile organic compounds.) On

13  information and belief, Dow Cleaners also dumped, spilled, or otherwise released hazardous

14  substances, including PCE, on, in, and under the Hagstrom Property, and those hazardous

15  substances migrated, and continue to migrate, off of the Hagstrom Property.

16         11.     On information and belief, Dow Cleaners' decades worth of releases of PCE to the

17  sanitary sewer system were illegal under Napa San Ordinances nos. 3 (Sept. 16, 1953), 32 (June

18  22, 1977), and 59 (renamed Ord. 67) (May 17, 1989), which prohibited, in one form or another,

19  discharge to any sanitary sewer "[a]ny waters or wastes containing a toxic or poisonous substance

20  in sufficient quantity to injure or interfere with any sewage treatment process, constitute a hazard

21  to humans or animals, or create any hazard in the receiving waters of the sewage treatment plant."

22  Furthermore, Ordinance no. 73 (Feb. 8, 1995) set forth an absolute ban on discharge of PCE to the

23  sanitary sewer system. Hagstrom acknowledges that its lessee's discharge of PCE to the sanitary

24  sewer system constituted substantial threat to human health or the environment. (FAC ¶¶ 32, 43,

25  57)

26         12.     On information and belief, Dow illegally dumped or spilled PCE onto or into the

27  ground at or around the Hagstrom Property. *See, e.g.*, FAC Exh. D (PCE soil vapor levels directly

28  under the Dow dry cleaner facility was magnitudes of order higher than any other location

DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM,
AND DEMAND FOR JURY TRIAL

1  sampled, at over one million micrograms per cubic meter.) Such releases migrated, and are

2  migrating, off-site of the Hagstrom Property.

3        13.    On information and belief, Hagstrom should or would have been aware, actually or

4  constructively, that Dow was discharging its chemicals to the sanitary sewer system, and had the

5  contractual right, through its lease with Dow, to control, limit, and mitigate Dow's illegal disposal,

6  spilling, and dumping. Yet, for the over four decades of Dow's operation on the Hagstrom

7  Property, Hagstrom grossly and recklessly neglected its duty to do so.

8        14.    On information and belief, Cross-Defendant Napa San owned and operated the

9  sanitary sewer system within the City of Napa, including, without limitation, the sanitary sewer

10  pipes identified in the FAC, beginning in 1949 through the present. The City never owned or

11  operated any part of the sanitary sewer system or any active sanitary sewer pipe or line.

12        15.    On information and belief, until or around 1968, Napa San owned, operated, and

13  maintained what had been the Former Combined Sewer Pipe that ran along Seminary Street in

14  Napa. In or around 1968, sanitary waste that had been illegally discharged by Dow through that

15  combined line was rerouted to another sanitary line, immediately proximate and parallel to the

16  Former Combined Sewer Pipe, also owned, operated, and maintained by Napa San ("1968

17  Seminary Sanitary Line"). From that time on, no further contribution of industrial waste, including

18  Dow's hazardous substances, was disposed into that Former Combined Sewer Pipe. Rather, what

19  had been the combined line along Seminary Street pre-1968 was no longer a sanitary sewer line,

20  but from that point on was a storm sewer line operated by the City.

21        16.    On information and belief, from 1968 forward, any PCE or other hazardous

22  substances illegally discharged by Dow was routed to Napa San's 1968 Seminary Sanitary Line.

23        17.    On information and belief, no PCE from Dow, nor any hazardous substances

24  released by Dow, were discharged to the Seminary Street storm sewer line since, from 1968

25  forward, that line has been operated by the City. The "Facility" alleged in the FAC (¶¶ 13, 29),

26  *i.e.*, the sanitary system and lines, was never a "facility" owned, operated, or maintained by the

27  City.

28        18.    The PCE and any other hazardous substances released by Dow from the Hagstrom

Property to the environment, or those discharged by Dow through the sanitary sewer system, and releases from the sanitary sewer system, if any, originate from and are directly associated with the same location—the Hagstrom Property and Hagstrom/Dow Cleaners' site. The appropriate "facility" designation under CERCLA is not simply the sanitary "[s]ewer pipes in the vicinity of the Property," as alleged in the FAC, but rather is the full scope of the Dow Cleaners' site—the Hagstrom Property, areas impacted by off-site migration of hazardous substances from the Hagstrom Property, and sanitary sewer pipes in the vicinity of the Property (collectively, the "Hagstrom-Dow Facility"). *See* CERCLA § 101(9), 42 U.S.C. § 9601(9); 40 C.F.R. § 302.3 ("Facility" is defined, in part, to include any "pipe or pipeline (including any pipe into a sewer or publicly owned treatment works)" or "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located.") Here, both elements of the "facility" designation are present. The Hagstrom Property and the Napa San sanitary sewer pipes in the vicinity of the Property are units or segments that together comprise the Hagstrom-Dow Facility.

19.    On information and belief, and pending further investigation, any releases of PCE from the sanitary sewer lines, if any, occurred either through natural volatilization of the PCE that could seep through the type of clay sanitary sewer line typically used and adequately maintained by sewer authorities at the time of Dow's illegal discharges into the sanitary sewer system, or through breaks that may have occurred in those lines prior to investigations conducted by Hagstrom's contractor, Trinity Source Group, Inc. ("Trinity"), or breaks in the lines caused by Trinity during its investigation.

20.    On information and belief, Hagstrom knew about the PCE contamination associated with the Hagstrom Property no later than 2002. (FAC ¶ 10)

21.    On information and belief, Hagstrom waited until 2021, with Trinity's initial investigation of off-site impacts, before it took any action with regard to the contamination migrating off of its Property. Trinity's initial off-site investigation was completed in 2022 and identified volatile organic chemical impacts in shallow groundwater proximate to the Hagstrom Property. (FAC ¶ 11) On information and belief, the results of that investigation were conveyed to

1  the Napa County Department of Environmental Health in a letter dated November 21, 2022.

2  Around that time, in September 2022, and out of concern when learning of Trinity's investigation

3  and finding that contamination migrated off of the Hagstrom Property, the City engaged Roux

4  Associates, Inc. ("Roux") to investigate the contamination as it related to occupied City buildings

5  and potential exposure to City employees and others in the vicinity of those buildings. Roux

6  completed a Phase 1 Environmental Assessment in November 2022, which included, among other

7  things, review of work conducted by Trinity.

8      22.    On information and belief, the regulatory agency overseeing the contamination

9  from the Hagstrom Property, the San Francisco Bay Regional Water Quality Control Board

10  ("Regional Board"), designated Hagstrom as the "responsible party" with regard to the site as

11  early as 2003.

12      23.    In correspondence in late January 2023, the Regional Board communicated to Roux

13  that Hagstrom, as the responsible party, would submit a corrective action plan to the Regional

14  Board.

15      24.    It was determined by Roux that as Trinity's sampling conducted to assess impacts

16  to Blue Oak Middle School ("Blue Oak") showed high levels of soil vapor (10,000 micrograms

17  per cubic meter) proximate to two occupied City buildings—the Community Services Building

18  ("CSB") and Housing Authority Building ("HSB")—it was necessary for the City to conduct its

19  own indoor air sampling to ensure the safety of its employees and the public. In February 2023,

20  Roux conducted indoor air sampling and sub-slab vapor sampling at and around the CSB and

21  HSB. All City owned properties, including the CSB and HSB, are hereinafter referred to as "City

22  Property(ies)".

23      25.    It was not until February 2023 that the City was able to confirm impacts to the CSB

24  and HAB, and potentially other City Property, associated with off-site contamination related to

25  Dow's illegal discharges and releases.

26      26.    On May 12, 2023, Roux provided to the Regional Board an "Indoor Air

27  Assessment Report" identifying "Impact of Former Dow Cleaners Site, City of Napa Owned

28  Buildings." The Indoor Air Assessment Report noted that PCE was detected in sub-slab vapor at

both the CSB and HSB above established regulatory Environmental Screening Levels ("ESLs"), and was of particular concern at the CSB, where one sample was detected with a PCE concentration of 16,000 micrograms per cubic meter. Additionally, PCE was detected in indoor air samples, which necessitated further indoor air monitoring by Roux on behalf of the City to ensure the safety of City employees and members of the public. The Indoor Air Assessment Report further noted that the February 7, 2023 Feasibility Study and Remedial Action Plan prepared by Trinity on behalf of Hagstrom was inadequate because it did not consider offsite impacts from the Dow Cleaners site or the role, if any, of Napa San's sanitary sewer system, and that Hagstrom's proposed remedy, dual phase extraction, would do little, if anything, to remedy offsite impacts.

27.    Roux conducted further indoor air sampling in September 2023, finding PCE concentrations at the CSB above ESLs. Roux conducted further testing in April 2024. As a result of the indoor air sampling, and health impacts posed by the contamination from the Hagstrom Property, the City contracted with Roux to provide design and implementation of reasonable and necessary mitigative measures to reduce PCE impacts to indoor air at the CSB and provide for the safety of City employees and the general public.

28.    Based on information and belief, all PCE contamination at, on, or under the Hagstrom Property, and offsite of the Hagstrom Property, including contamination impacting City Properties, is the result of and originated from Dow Cleaners' illegal discharges, spills, and dumping, and of Hagstrom's failure, as Property owner and lessor, to take measures available to it to control or otherwise mitigate the extent of that contamination. That contamination, which originated with the initial discharges, spills, and dumping by Dow at, on, or under the Hagstrom Property, under Hagstrom's lease and ownership, has continued without abatement through the present.

29.    Based on information and belief, to the extent some portion of the PCE contamination offsite of the Hagstrom Property, including contamination impacting City Properties, is associated with controllable releases from Napa San's sanitary systems and lines, those releases are attributable to Napa San's acts or omissions.

30.    To the extent of any damages and costs incurred by Blue Oak, or as such has been

1    assigned to Hagstrom, such damages and costs are the result of Hagstrom's (and/or Dow's) acts

2    and/or omissions.

3         31.    As a result of Dow Cleaner's illegal discharges, spills, and dumping, and

4    Hagstrom's acts, omissions, and status as owner of the Hagstrom Property, the City has incurred,

5    and continues to incur, response costs and other damages resulting from investigating and

6    remediating the contamination impacting City Properties. All of the City's response actions have

7    been consistent with the National Contingency Plan.

8         32.    As a result of Napa San's ownership and operation of the sanitary system and lines,

9    to the extent contributing to controllable contamination impacting City Properties, if at all, the

10   City has incurred, and continues to incur, response costs and other damages resulting from

11   investigating and remediating contamination impacting City Properties. All of the City's response

12   actions have been consistent with the National Contingency Plan.

### FIRST CLAIM FOR RELIEF

### (CERCLA Cost Recovery, 42 U.S.C. §§ 9607(a))

### (As Against All Defendants)

16        33.    The City reiterates and incorporates by reference herein Paragraphs 1-32 of this

17   Counter and Crossclaim.

18        34.    The City is a "person" within the meaning of CERCLA §101(21), 42 U.S.C. §

19   9601(21).

20        35.    Defendants and each of them are a "person" within the meaning of CERCLA

21   §101(21), 42 U.S.C. § 9601(21).

22        36.    PCE is a hazardous substance under CERCLA, 42 U.S.C. § 9701(14).

23        37.    The Hagstrom-Dow Facility is a "facility" as defined under CERCLA § 101(9), 42

24   U.S.C. § 9601(9).

25        38.    Hagstrom is liable as current owner of the Hagstrom Property, and the Hagstrom

26   Property segment of the Hagstrom-Dow Facility, for the release, threatened release, or ongoing

27   release of hazardous substances into the environment, and has been owner of the Hagstrom

28   Property and has had operational responsibility for the Hagstrom-Dow Facility for the entire

DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM,
AND DEMAND FOR JURY TRIAL

1  period of such releases or threatened releases, and is liable under CERCLA § 107(a)(1) and (2), 42

2  U.S.C. § 9607(a)(1) and (2).

3      39.    Napa San is liable as current owner and operator of the sanitary sewer segment of

4  the Hagstrom-Dow Facility for the release, threatened release, or ongoing release of hazardous

5  substances into the environment, and has been owner and operator of the sanitary sewer segment

6  of the Hagstrom-Dow Facility for the entire period of such release, and is liable under CERCLA §

7  107(a)(1) and (2), 42 U.S.C. § 9607(a)(1) and (2).

8      40.    The City has incurred response costs consistent with the National Contingency

9  Plan, and will continue to incur response costs, as a result of releases or threatened releases from

10  the Hagstrom-Dow Facility in the aggregate, and from each of the Hagstrom Property and Napa

11  San sanitary sewer segments impacting the City Properties, which are occupied by City employees

12  and members of the public.

13      41.    As current and former owners and operators of the aggregated parts of the

14  Hagstrom-Dow Facility, Defendants are jointly and severally liable under CERCLA § 107(a), 42

15  U.S.C. § 9607(a) for the City's response costs to date, and those to be incurred, in addressing

16  releases from the Hagstrom-Dow Facility, directly or indirectly resulting in the City's response

17  costs.

18      42.    As the City will continue to incur response costs for which Defendants are liable

19  under CERCLA § 107, CERCLA § 113(f)(2) mandates that the Court also enter declaratory

20  liability against Defendants for response costs or damages incurred by the City that will be binding

21  on any subsequent action or actions by the City to recover further response costs or damages.

**SECOND CLAIM FOR RELIEF**

**(Contribution under CERCLA § 113(f)(1), 42 U.S.C. § 9713(f)(1))**

**(As Against All Defendants)**

25      43.    The City reiterates and incorporates by reference herein Paragraphs 1-42 of this

26  Counter and Crossclaim.

27      44.    Hagstrom alleges City is liable pursuant to 42 U.S.C. § 9607(a)(1) as the current

28  owner and operator of facilities, including the Former Combined Sewer Pipe, that released or are

DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM,
AND DEMAND FOR JURY TRIAL

releasing hazardous substances, including wastewater and/or stormwater containing VOCs, into the environment and, pursuant to 42 U.S.C. § 9607(a)(2).

45.     The City denies any liability under the FAC, but if CERCLA liability for Hagstrom's alleged response costs is established, then pursuant to CERCLA section 113(f)(1), 42 U.S.C. § 9613(f)(1), the City is authorized to seek contribution in this action.

46.     On that basis, City asserts its right of contribution against Defendants in connection with the contamination alleged in the FAC.

47.     Each of the Defendants is a liable or potentially liable person under section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

48.     Each of the Defendants is a "person" as defined in CERCLA § 101(21), 42 U.S.C. § 9601(21).

49.     The City seeks contribution from Defendants and each of them as owner, operator, discharger, arranger, and/or transporter of hazardous materials.

50.     The City is informed and believes, and based thereon allege, that each Defendant:

    a.  "released" or threatened to "release" hazardous substances in, at or around the Site within the meaning of § 101(22) of CERCLA, 42 U.S.C. § 9601(22) during their operation, and/or occupation of the portions of the Hagstrom-Dow Facility and/or surrounding areas; and/or

    b.  is the current owner and/or operator portions of the Hagstrom-Dow Facility; and/or

    c.  owned, operated, and/or leased the portions of the Hagstrom-Dow Facility and had a duty, authority, obligation, and/or right to manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of their various lessees and/or sub-lessees to prevent the "release" or threatened "release" of hazardous substance, and to remediate any such "release" within the meaning of § 101(22) of CERCLA, 42 U.S.C. § 9601(22); and/or

    d.  is vicariously liable for a "release" or threatened "release" of hazardous substances at the Hagstrom-Dow Facility within the meaning of § 101(22) of CERCLA, 42 U.S.C. § 9601(22), during their ownership, operation, and/or occupation of the

1    relevant portions of Hagstrom-Dow Facility and/or other properties, under

2    applicable alter-ego, corporate successor, corporate parent, and/or other theories of

3    vicarious liability; and/or

4    e.    were and are the owner and/or operator of portions of the Hagstrom-Dow Facility

5    and other properties, at the time of the disposal of hazardous substances, from

6    which there is alleged to have been a release or threatened release of a hazardous

7    substance that led to the incurrence of response costs; and/or

8    f.    arranged for the disposal or transport of water or wastewater containing hazardous

9    substances via intentional steps, including contracts, agreements, or other actions

10    and exercised control over the disposal process; and/or

11    g.    accepted hazardous substances for transportation through the sanitary sewer

12    segment of the Hagstrom-Dow Facility to disposal facilities or sites selected by the

13    Defendants.

14    51.    The City denies liability for response costs but to the extent CERCLA liability is

15 determined under the FAC, the Court should allocate the response costs sought among liable or

16 potentially liable parties, including each of the Defendants, using such equitable factors as the

17 Court determines are appropriate.

18    **THIRD CLAIM FOR RELIEF**

19    **(CERCLA Declaratory Relief, 42 U.S.C. § 9613(f))**

20    **(As Against All Defendants)**

21    52.    The City reiterates and incorporates by reference herein Paragraphs 1-51 of this

22 Counter and Crossclaim.

23    53.    An actual and justiciable controversy exists between the City and Defendants

24 regarding their respective rights and obligations for response costs that allegedly have been

25 incurred by Hagstrom and have and will be incurred by the City as a result of alleged releases or

26 threatened releases of hazardous substances.

27

28

DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM, AND DEMAND FOR JURY TRIAL

54.    The City contends that it is entitled to a declaration that Defendants are liable for all past, present, and future response costs and other damages incurred by the City in connection with the Site. Based on information and belief, Defendants contend otherwise.

55.    The City is authorized to seek declaratory judgment against each of the Defendants under 42 U.S.C. § 9613(f); and 28 U.S.C. § 2201.

### FOURTH CLAIM FOR RELIEF

**(Equitable Indemnity)**

**(As Against Hagstrom and Roes 1-10)**

56.    The City reiterates and incorporates by reference herein Paragraphs 1-55 of this Counter and Crossclaim.

57.    The liability, if any, that the City may have to any person or entity relating to the alleged contamination at issue under any law, regulation, or common law principle, is the result, in whole or in part, of the acts or omissions of Hagstrom and Roes 1-10, as release and threatened release of hazardous substances from the Hagstrom-Dow Facility is primarily the direct and proximate result of Hagstrom and Roes 1-10's actions, omissions, or conduct.

58.    If the City is found in some manner liable to Hagstrom or to any other person or entity, as a result of the incidents and occurrences described in the FAC, liability will derive, in whole or in part, from the actions, omissions or conduct of Hagstrom and Roes 1-10. As a matter of equity, Hagstrom and Roes 1-10 are accordingly bound and obligated to indemnify and hold harmless the City for all response costs and damages that have been or will be incurred by Hagstrom and Roes 1-10 or any other person or entity as required by law in response to the alleged released or threatened release of hazardous substances at issue in the FAC.

### FIFTH CLAIM FOR RELIEF

**(Contribution under California Law, Cal. Civ. § 1432)**

**(As Against Hagstrom and Roes 1-10)**

59.    The City reiterates and incorporates by reference herein Paragraphs 1-58 of this Counter and Crossclaim.

60.     Section 1432 of the California Civil Code of Procedure provides in pertinent part: "a party to a joint, or joint and several obligation, who satisfied more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him." In this action, Hagstrom filed its FAC against the City and Napa San alleging, among other causes, continuing private nuisance and dangerous condition of public property.

61.     The City denies responsibility under Hagstrom's FAC and that the alleged damages and losses attributed to the City in the FAC because they were caused by Hagstrom and Roes 1-10. If, contrary to the City's defenses to the FAC the City is held liable for any or all of Hagstrom's claims, then the City alleges that Hagstrom, as joint tortfeasor, acted negligently, and was the proximate cause of such alleged damages and losses.

62.     If the City is found to be responsible for any of the damages or losses claimed by Defendants, then the City is entitled to judgment for contribution according to common law principles of comparative fault and equitable allocation of loss, as well as under applicable statutory law.

**SIXTH CLAIM FOR RELIEF**

**(Continuing Nuisance under California Law, Cal. Civ. Code § 3479)**

**(As Against Hagstrom and Roes 1-10)**

63.     The City reiterates and incorporates by reference herein Paragraphs 1-62 of this Counter and Crossclaim.

64.     The City owns the City Properties.

65.     The contamination caused by Hagstrom and Roes 1-10 at, on, under, or proximate to City Properties, and which has been continual through the present, has required to the City to notify employees and others of the health effects of such contamination, and has required substantial investigation and implementation of vapor mitigation remedial measures at great expense to the City.

66.     As a result of Hagstrom and Roes 1-10's negligent acts and omissions, it created, caused, or contributed to conditions at, on, under, or proximate to City Properties, that are injurious to human health, is indecent and offensive to the senses, obstructs the City's use of those

Properties, and interferes with the City's use and enjoyment of City Properties.

67.     The City has not consented to the acts and omissions of Hagstrom and Roes 1-10 that have caused such conditions.

68.     The nuisance is continuing in nature in that it can and should be abated, and persists fully remedied. Each day that the nuisance remains unabated constitutes a new and continuing wrong, giving rise to successive causes of action.

69.     As a direct and proximate result of Hagstrom and Roes 1-10's acts and omissions, the City has been, and continues to be, harmed by those acts and omissions.

## SEVENTH CLAIM FOR RELIEF

### (Trespass under California Law, Cal. Civ. Code § 3479)

### (As Against Hagstrom and Roes 1-10)

70.     The City reiterates and incorporates by reference herein Paragraphs 1-70 of this Counter and Crossclaim.

71.     The City owns and possesses the City Properties.

72.     The contamination caused by Hagstrom and Roes 1-10 or for which Hagstrom and Roes 1-10 is responsible is present at, on, under, or proximate to City Properties, is unauthorized, and interferes with the City's right of exclusive possession.

73.     The presence of such contamination is ongoing, and the contamination remains at, on, under, or proximate to City Properties, and as a direct and proximate result, the City has suffered, and continues to suffer, property damage, loss of use, costs of investigation and remediation, and exposure to liability.

## EIGHTH CLAIM FOR RELIEF

### (Negligence)

### (As Against Hagstrom and Roes 1-10)

74.     The City reiterates and incorporates by reference herein Paragraphs 1-73 of this Counter and Crossclaim.

75.     On information and belief, Counter-Defendant Hagstrom is the current owner of the Hagstrom Property, and leased a portion of the Hagstrom Property to Dow Cleaners from at

least 1960, and likely earlier, until 2003. Dow operated a dry cleaning operation for the entirety of that period, and illegally released hazardous substances, including PCE, into the environment, through disposal to the Napa San sanitary sewer system, and spills and dumping on or to the ground. Hagstrom had sufficient control over the Hagstrom Property through its lease to inspect, control, and cause Dow to cease its illegal and deleterious acts, and otherwise mitigate impacts to human health and the environmental caused by, and continuing to be caused by, the releases or threatened releases of hazardous substances, including PCE, from the Hagstrom Property. Hagstrom has and had a duty to take such actions, that were within its control and authority, to protect the public and environment, including City of Napa employees and members of the public that occupied City Properties, from releases of hazardous substances, including PCE, from the Hagstrom Property.

76.    On information and belief, Hagstrom breached that duty by failing to ensure that Dow did not dispose of hazardous substances into the sanitary sewer system directly or indirectly connected to the Hagstrom Property, nor otherwise dump, release, or spill such chemicals into or onto the ground or otherwise into the environment. For the over four decades of Dow's operation on the Hagstrom Property, Hagstrom negligently neglected its duty.

77.    Hagstrom and Roes 1-10 further owe the City and the public a duty to exercise the standard of care a reasonably prudent person would exercise with respect to their ownership, operation, or use of the Hagstrom-Dow Facility. Hagstrom and Roes 1-10's failure to exercise due care is presumed because it violated statutes, ordinances, and regulations. The City belongs to the class of persons for whose protection the statute, ordinance, or regulation was adopted.

78.    On information and belief, all hazardous substances, including PCE contamination, at, on, or under the Hagstrom Property, and offsite of the Hagstrom Property, including contamination impacting City Properties, were directly and proximately caused by Dow Cleaners' illegal discharges, spills, and dumping, and by Hagstrom's failure, as Property owner and lessor, to take measures available to it to control or otherwise mitigate the extent of that contamination.

79.    Dow Cleaners' illegal discharges, spills, and dumping, and Hagstrom's negligent acts, omissions, and status as owner of the Hagstrom Property, has caused chemical contamination

1   of City Properties and the City has incurred, and continues to incur, response costs and other

2   damages resulting from investigating and remediating the contamination impacting City

3   Properties, and other damages to be proved at trial.

4       80.     As a result of Hagstrom and Roes 1-10's negligence, City has been damaged in an

5   amount to be determined at trial and City is entitled to recover those damages.

6                              **NINTH CLAIM FOR RELIEF**

7                  **(Declaratory Relief, 28 U.S.C. § 2201 *et seq.*)**

8                          **(As Against All Defendants)**

9       81.     The City incorporates by reference each allegation contained in paragraphs 1-80 of

10  this Counter and Crossclaim.

11      82.     The Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, provides: "In a case of

12  actual controversy within its jurisdiction . . . any court of the United States . . . may declare the

13  rights and other legal relations of any interested party seeking such declaration, whether or not

14  further relief is . . . sought."

15      83.     Defendants have not acknowledged their joint responsibility for response costs,

16  damages, and fees related to the City Properties or for the claims set forth in the FAC.

17      84.     There has arisen and now exists an actual controversy between the City and

18  Defendants.

19      85.     The City is entitled to, and seek, a declaration that Defendants must indemnify and

20  hold the City harmless for all costs, fees (including attorney's fees), and damages related to or

21  arising from the claims asserted by Hagstrom, and further, that Defendants are liable to the City

22  for the Claims as set forth in this Counter and Crossclaim.

23      86.     The City is also entitled to, and seek, a declaration that should the City be deemed

24  liable to Hagstrom or to any other party for any response costs, damages, and other costs arising

25  from the alleged contamination at issue in the FAC or this Counter and Crossclaim, Hagstrom

26  shall indemnify the City for all such costs.

27

28

DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM,
AND DEMAND FOR JURY TRIAL

87.    A declaratory judgment setting forth the parties' rights and obligation is necessary to avoid a multiplicity of actions that would result if the City was required to defend itself against all the claims of Hagstrom and then bring a separate indemnification action against Defendants.

## PRAYER FOR RELIEF

WHEREFORE, the City prays for judgment against Defendants, as follows:

1.    For cost recovery pursuant to CERCLA § 107, 42 U.S.C. § 9607 as against all Defendants;

2.    For contribution pursuant to CERCLA § 113, 42 U.S.C. § 9613 as against all Defendants;

3.    For declaratory relief pursuant to CERCLA § 113, 42 U.S.C. § 9613 as against all Defendants;

4.    For equitable indemnity, contribution, continuing nuisance, trespass, and negligence as against Hagstrom and Roes 1-10;

5.    For declaratory relief pursuant to 28 U.S.C. § 2201 *et seq.* as against all Defendants;

6.    For the City's costs of suit incurred, as permitted by law, to defend against Hagstrom's claim and in this Cross and Counterclaim;

7.    For an award of attorneys' fees on the City's claims, as may be allowed by statute or otherwise; and

8.    For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the City hereby demands that trial be by jury on all issues so triable in this Counter and Crossclaim.

DATED:  September 11, 2025          **BAY LAW GROUP LLP**

By: _____
          /s/ Joshua A. Bloom
          JOSHUA A. BLOOM
          Attorneys for CITY OF NAPA

DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM, AND DEMAND FOR JURY TRIAL

## CERTIFICATE OF SERVICE

I am a citizen of the United States, over the age of 18 years, and not a party to this action. I am employed in the County of Alameda, State of California. My business address is 1831 Solano Ave. #8554, Berkeley, California 94707. On September 11, 2025, I served the following document(s):

**DEFENDANT CITY OF NAPA'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM, AND DEMAND FOR JURY TRIAL**

**X**     **BY ELECTRONIC TRANSMISSION**: by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

| | |
|---|---|
| Kamran Javandel<br>Marshall C. Wallace<br>Jordan L. Wright<br>ALLEN MATKINS LECK GAMBLE<br>MALLORY & NATSIS LLP<br>Three Embarcadero Center, 12th Floor<br>San Francisco, CA 94111-4074 | Attorneys for Plaintiff<br>Hagstrom Properties, LLC, a California Limited Liability Company<br>Phone: (415) 837-1515<br>Fax: (415) 837-1516<br>E-Mail: kjavandel@allenmatkins.com;<br>mwallace@allenmatkins.com;<br>jwright@allenmatkins.com |
| Garrett Lewis Jansma<br>ALLEN MATKINS LECK GAMBLE<br>MALLORY & NATSIS LLP<br>2010 Main Street, Ste 800<br>Irvine, CA 92614 | Attorneys for Plaintiff<br>Hagstrom Properties, LLC, a California Limited Liability Company<br>Phone: 949-553-1313<br>Fax: 949-553-8354<br>Email: gjansma@allenmatkins.com |
| Gregory Joe Newmark<br>Viviana Lamanna Heger<br>DUANE MORRIS LLP<br>865 South Figueroa Street, Suite 3100<br>Los Angeles, CA 90017 | Attorneys for Defendant<br>Napa Sanitation District<br>Phone: 213-689-7434<br>Fax: 213-689-7401<br>Email: gnewmark@duanemorris.com;<br>vheger@duanemorris.com |
| David A. Goldstein<br>DUANE MORRIS LLP<br>One Market Plaza, Suite 220<br>Spear Tower<br>San Francisco, CA 94105 | Attorneys for Defendant<br>Napa Sanitation District<br>Phone: 415 957-3020<br>Fax: 415 957-3001<br>Email: DAGoldstein@duanemorris.com |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 11, 2025, at Berkeley, California.

_____
BETH B. KOH